Filed 6/13/18

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| VINOD K. KAURA et al., | |
| Plaintiffs and Respondents, | E065751 |
| v. | (Super.Ct.Nos. INC1302611, INC1303669) |
| STABILIS FUND II, LLC, | |
| Defendant and Appellant; | OPINION |
| CITY OF INDIO, | |
| Intervener and Respondent. | |

APPEAL from the Superior Court of Riverside County. James T. Latting, Judge. Reversed.

Reed Smith, Bernard P. Simons, Farah Tabibkhoei, and Kasey J. Curtis for Defendant and Appellant.

Borton Petrini and Daniel L. Ferguson for Plaintiffs and Respondents.

---

*        Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part IV.

Barnes Law, Robert E. Barnes for Plaintiffs and Respondents.

Silver & Wright, Curtis R. Wright, and Daniel J. Pasek for Intervener and Respondent.

Stabilis Fund II, LLC (Stabilis) holds a trust deed on an apartment complex in Indio. In 2013, Stabilis sued the owners of the property, alleging that the underlying loan was in default, seeking judicial foreclosure, and, in the interim, seeking a receiver "to make sure that the Real Property is properly maintained and that property conditions do not pose a risk of harm to tenants and third parties." On Stabilis's motion, the trial court appointed a receiver.

In 2014, the City of Indio (City) intervened. It alleged that the property was a public nuisance, riddled with hazardous and substandard conditions in violation of state and local law. It moved to modify the receivership by instructing the receiver to remedy these conditions. Stabilis did not argue that the City was not entitled to the requested modification; however, it did argue that the motion was premature, that the receiver already had the necessary powers, and that it should be allowed to proceed with foreclosure. The trial court nevertheless granted the motion.

The City then moved for an award of its attorney fees and expenses.[1] As authority for the award, it cited three statutes:

---

[1] We use "expenses" as shorthand for expenditures that are not recoverable as ordinary litigation "costs" under Code of Civil Procedure sections 1032, subdivision (b) and 1033.5.

2

1.  Health and Safety Code section 17980.7, subdivision (c)(11), which provides for an award of attorney fees (but not expenses) to the prevailing party in an action to appoint a receiver pursuant to the State Housing Law.

2.  Health and Safety Code section 17980.7, subdivision (d)(1), which provides for an award of attorney fees and expenses against the owner of a substandard building.

3.  Indio Municipal Code section 10.20(C), which provides for an award of attorney fees and expenses to the prevailing party in an action to abate a public nuisance.

The trial court granted the motion; it awarded the City $98,190.47, to be paid out of the receivership estate, if there were sufficient funds, and if not, then by Stabilis.

Stabilis appeals. Its central position is that it is only the lender; if anyone is liable for attorney fees and expenses, it should be the owners. More specifically, it argues that none of the three statutes cited by the City authorizes the trial court's award of attorney fees and expenses against it under the circumstances of this case. We agree. Hence, we will reverse.

I

FACTUAL BACKGROUND

The following background facts are taken from the pleadings, but they do not appear to be disputed.

As of 2007, Vinod K. Kaura and Veena R. Kaura, as trustees (Kauras), owned a 75-unit apartment complex in Indio (property). In December 2007, they took out a

3

$4,050,000 loan, secured by a deed of trust on the property.[2]  Stabilis is the current holder of the deed of trust.

In June 2009, the Kauras conveyed the property to Valley and Mountain, LLC (Valley and Mountain).  Veena Kaura controls Valley and Mountain.  (We will refer to the Kauras and Valley and Mountain, collectively, as the Kaura parties.)  In September 2011, the Kaura parties stopped making payments on the loan.

## II

## PROCEDURAL BACKGROUND

On April 24, 2013, the Kaura parties filed an action against Stabilis.[3]

On June 7, 2013, Stabilis filed a separate action against the Kaura parties, asserting causes of action for (1) breach of contract, (2) judicial foreclosure, (3) appointment of a receiver to collect rent and to protect the property, and (4) possession of personal property collateral.  The two actions were eventually consolidated.

---

[2]     One Neil Kaura was also a borrower.  Stabilis named him as a defendant in its complaint.  The City, however, did not name him as a defendant in its complaint in intervention.  Thus, the City did not seek, and the trial court did not award, any attorney fees or expenses against him.  He has not filed a brief in this appeal.

We conclude that Neil Kaura is not a party to this appeal.  We will disregard his role in the case from here on.

[3]     The only defendant named in the complaint was Compass Bank.  Stabilis filed an answer as successor in interest to Compass Bank.

4

On June 26, 2013, Stabilis filed a motion for the appointment of a receiver. On August 26, 2013, the trial court granted the motion; it appointed Terrence Daly as receiver.

On August 28, 2013, however, Valley and Mountain filed for bankruptcy. As a result of the automatic stay, Receiver Daly could not take possession of the property.

On March 12 and again on March 20, 2014, the City inspected the property. It found "hundreds of extremely dangerous building conditions that posed a risk to the health and safety of occupants and the public."

On April 8, 2014, the bankruptcy court lifted the automatic stay.

On April 23, 2014, the parties stipulated to substitute Paul Carlson in place of Receiver Daly. On September 23, 2014, the trial court confirmed the substitution.

Meanwhile, on May 16, 2014, the City issued a "Legal Notice and Order to Repair or Abate" (capitalization altered) (notice). The notice included a finding that "the unlawful conditions . . . substantially endanger[] the health, safety, and general welfare of the Subject Property's occupants, the surrounding community, and the public . . . ."

On December 24, 2014, the City moved for leave to intervene. On January 23, 2015, the trial court granted the motion.

On January 27, 2015, the City filed a complaint in intervention against the Kaura parties and Stabilis. It asserted three causes of action — for a substandard-housing receivership, for public nuisance, and for public nuisance per se.

Also on January 27, 2015, the City filed a motion to modify the receivership.[4] The main relief sought was an order "[m]odifying the Receiver's orders to require the rehabilitation of the Subject Property . . . ."

Stabilis responded that the motion was premature. It argued that the receiver already had most of the powers and duties sought, and it claimed that he had already cured 60 percent of the substandard conditions. The Kaura parties, on the other hand, stipulated that the motion should be granted.

On February 20, 2015, the trial court granted the City's motion to modify the receivership.

On June 3, 2015, the City filed a motion to disqualify Receiver Carlson, on the grounds that (1) rather than being neutral, he was under the control of Stabilis; (2) he had entered into a prohibited agreement with Stabilis;[5] and (3) he had failed to fulfill his duties.

Stabilis did not oppose the disqualification motion; however, it did deny that it controlled Receiver Carlson.

---

**4** Initially, the City proceeded by way of an ex parte application. The trial court ordered that the application be treated as a noticed motion.

**5** The assertedly prohibited agreement was an agreement to hire Stabilis's preferred construction manager and contractors. California Rules of Court, rule 3.1179(b), (b)(3) prohibits a receiver from entering into an agreement with the party seeking the appointment of the receiver concerning, among other things, "[w]ho[m] the receiver will hire . . . to perform necessary services[.]"

6

Receiver Carlson did oppose the motion. He denied having any conflict of interest; he explained that Stabilis was funding all repairs because the property did not generate enough income.

On July 9, 2015, the trial court granted the City's disqualification motion. It found that Receiver Carlson had entered into a prohibited agreement and had failed to fulfill his duties; however, it did not find that he was under Stabilis's control. It appointed Mark Adams to replace him.

On February 2, 2016, the City filed a "cost recovery motion." (Capitalization altered.) It sought $87,407.40 in attorney fees, $4,303.51 in litigation costs, and $6,479.56 in enforcement costs, for a total of $98,190.47. It asked that, to the extent that these amounts could not be recovered from the receivership estate, they be awarded against the Kaura parties and Stabilis. The motion cited Health and Safety Code section 17980.7, subdivisions (c)(11) and (d)(l), and Indio Municipal Code section 10.20.

The Kaura parties filed an opposition to the motion. In it, they argued, among other things, that the attorney fees and expenses should be awarded solely against Stabilis.

Stabilis also filed an opposition to the motion. It argued, among other things, that under the relevant statutes, only the owner of a public nuisance can be liable for attorney fees and expenses.

7

On March 1, 2016, after hearing argument, the trial court granted the City's cost recovery motion, "against Stabilis only." It found that the City was the prevailing party under all three of the statutes on which the City relied.

It further found that: "There is . . . no dispute that the dangerous conditions developed while the property was in possession of the first receiver. The first receiver was removed after he admitted that he was acting at the direction of Stabilis. Valley & Mountain was not in possession of the property during this time and, in fact, was precluded from remedying the condition of the property. Effectively, the City's complaint in intervention was directed toward Stabilis because Stabilis was in possession of the property through its control of the first receiver." It concluded that "[o]n a practical level, the City prevailed against Stabilis" and "against Stabilis only."

It therefore awarded the City $98,190.47 against the receivership estate and, to the extent that the receivership estate proved insufficient, against Stabilis.

III

THE STATUTORY AUTHORITY FOR

AN AWARD OF ATTORNEY FEES AND EXPENSES

Stabilis contends that the City was not statutorily authorized to recover its attorney fees and expenses other than from the owner of the property.

"With regard to an award of attorney fees in litigation, California generally follows what is commonly referred to as the 'American Rule,' which provides that each party to a lawsuit must ordinarily pay his or her own attorney fees. [Citation.]" (*Tract*

8

*19051 Homeowners Assn. v. Kemp* (2015) 60 Cal.4th 1135, 1142.) "[T]he Legislature has established a variety of exceptions to the American Rule by enacting numerous statutes that authorize or mandate an award of attorney fees in designated circumstances. [Citation.]" (*Ibid.*) But "[u]nless authorized by either statute or agreement, attorney's fees ordinarily are not recoverable as costs." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 127.)

"'[A] determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo.' [Citations.]" (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.) Likewise, "[t]he interpretation of a statute, or an ordinance, presents a question of law which we review de novo. [Citations.]" (*City of Los Angeles v. Superior Court of Los Angeles County* (2015) 234 Cal.App.4th 275, 281.)

The City asserted — and the trial court agreed — that it had a right to attorney fees and expenses under three separate statutory provisions. We will discuss these in turn.

A.     *Attorney Fees and Expenses under the State Housing Law*.

1.     *Statutory background*.

The State Housing Law (Health & Saf. Code, §§ 17910-17998.3) provides for the enforcement of health and safety standards for residential housing.

9

Health and Safety Code sections 17980.6 (section 17980.6) and 17980.7 (section 17980.7) were added to the State Housing Law in 1988.  (Stats. 1988, ch. 1567, § 1, pp. 5632-5633.)

Section 17980.6 authorizes an "enforcement agency"[6] to issue an order or notice to repair or abate violations of specified building standards when "the violations are so extensive and of such a nature that the health and safety of residents or the public is substantially endangered . . . ."

Section 17980.7 then states:  "If the owner fails to comply within a reasonable time with the terms of the order or notice issued pursuant to Section 17980.6, the following provisions shall apply."

One provision that applies is section 17980.7, subdivision (c).  It allows the enforcement agency to obtain the appointment of a receiver to take control of the property and to correct the violations.  Specifically, it provides:

"(c)  The enforcement agency . . . may seek and the court may order, the appointment of a receiver for the substandard building pursuant to this subdivision.

"(1)  In appointing a receiver, the court shall consider whether the owner has been afforded a reasonable opportunity to correct the conditions cited in the notice of violation. [¶] . . . [¶] . . .

---

**6**      "Enforcement agency" includes a city department that is in charge of the enforcement of the State Housing Law.  (Health & Saf. Code, §§ 17960, 17961, subd. (a), 17964; cf. Health & Saf. Code, § 17965.)

10

"(11) The prevailing party in an action pursuant to this section shall be entitled to reasonable attorney's fees and court costs as may be fixed by the court."[7]

Another provision that applies is section 17980.7, subdivision (d). It provides that, once the trial court "finds that a building is in a condition which substantially endangers the health and safety of residents," it can order the owner to do certain things, including "to pay all reasonable and actual costs of the enforcement agency including, but not limited to, inspection costs, investigation costs, enforcement costs, attorney fees or costs, and all costs of prosecution." (§ 17980.7, subd. (d)(1).)

In 2001, as part of a bill that also made minor changes to Health and Safety Code sections 17980.6 and 17980.7 (Stats. 2001, ch. 414, §§ 4-5, pp. 3741-3751), the Legislature enacted Code of Civil Procedure section 568.3 (section 568.3). (Stats. 2001, ch. 414, § 2, p. 3737.) It applies when a receivership is already in effect. Specifically, it provides:

"[A]ny . . . enforcement agency[] may file a motion in a receivership action for the purpose of seeking further instructions or orders from the court, if . . . :

"(a) Substandard conditions exist, as defined by Section 17920.3 . . . of the Health and Safety Code."

---

[7] Note that section 17980.7, subdivision (c)(11) does not authorize an award of *expenses*. Hence, even if it supported the award of attorney fees to the City, the City would have to find some other statutory support for the award of expenses.

11

2.      *Attorney fees and expenses under Health and Safety Code section 17980.7, subdivision (c)(11).*

Stabilis contends that the City was not entitled to attorney fees and expenses under section 17980.7, subdivision (c)(11) because a receiver had already been appointed when the City intervened.

Preliminarily, the City contends that Stabilis is barred from raising this argument because it did not raise it in the trial court. "We have discretion, however, to address a pure question of law raised for the first time on appeal. [Citation.]" (*Donorovich-Odonnell v. Harris* (2015) 241 Cal.App.4th 1118, 1130.) This argument presents just such a question. Moreover, it seems likely that the question will arise again in further fee proceedings in the trial court. We therefore exercise our discretion in favor of considering it.

As noted, Health and Safety Code section 17980.7, subdivision (c) allows a city to obtain "the *appointment* of a receiver . . . ." (Italics added.) By contrast, Code of Civil Procedure section 568.3 allows an enforcement agency to participate in an *existing* receivership proceeding; however, it does not provide for an award of attorney fees or expenses.

The City does not explain how its motion to *modify* the receivership could be deemed a motion to *appoint* a receiver. But even assuming that, as a matter of pure semantics, it could, that is not what the Legislature intended.

12

Section 17980.7 contemplates that there is an "owner" presently in control of the property. Thus, it applies only "[i]f the owner fails to comply within a reasonable time with the terms of the order or notice issued pursuant to Section 17980.6." It requires the trial court to "consider whether the owner has been afforded a reasonable opportunity to correct the conditions cited in the notice of violation" before appointing a receiver. (§ 17980.7, subd. (c)(1).) If a receiver has already been appointed, however, the owner no longer has the ability to comply and to correct.[8]

Thus, the Legislature enacted Code of Civil Procedure section 568.3 precisely *because*, in its view, Health and Safety Code section 17980.7, subdivision (c) did not apply if a receiver had already been appointed.

Section 568.3 was enacted in 2001 as part of Assembly Bill 472. According to the legislative history of the bill, when a rental housing property is already in a receivership, "substandard conditions can continue for months or years because no one can be held accountable for repairs. The owner no longer controls the property or its finances, the lender has not yet taken title to the property, and the receiver cannot be held legally liable." (Sen. Housing & Community Development Com., Analysis of Assem. Bill No. 472 (2001-2002 Reg. Sess.) Jun. 27, 2001, Comments, p. 4.) "According to the author's office, this creates a sort of 'legal limbo' in which no one is responsible for ensuring the

---

**8**      We address in part III.B, *post,* the City's contention that Stabilis is an "owner" within the meaning of section 17980.7. For present purposes, all that matters is that neither the Kaura parties nor Stabilis are owners *in possession*.

13

tenants' health and safety."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d Reading analysis of Assem. Bill 472 (2001-2002 Reg. Sess.) as amended Sept. 4, 2001, p. 4.)

In other words, the Legislature viewed Code of Civil Procedure section 568.3 as providing a remedy that was not already available under existing law — including Health and Safety Code section 17980.7, subdivision (c).  If the Legislature had wanted an enforcement agency to be able to recover attorney fees and expenses when it intervenes in an existing receivership, it would have so provided in Code of Civil Procedure section 568.3.  But it did not.

The City argues that it was proceeding under *both* Health and Safety Code section 17980.7, subdivision (c) *and* Code of Civil Procedure section 568.3.  It points out that its motion to modify the receivership cited both sections.  Moreover, in granting the motion, the trial court likewise cited both sections.

For the reasons we have already stated, however, this was legally incorrect.  The Legislature intended Health and Safety Code section 17980.7, subdivision (c) and Code of Civil Procedure section 568.3 to be mutually exclusive.  It is perfectly understandable that the City and the trial court would cite both statutes — a suspenders-and-belt approach is always the safest.  Nevertheless, neither the City nor the trial court could make Health and Safety Code section 17980.7, subdivision (c) apply simply by saying so.

The City also argues that it filed a motion to disqualify Receiver Carlson, which resulted in the appointment of Receiver Adams.  As already discussed, however, an enforcement agency is not entitled to attorney fees and expenses when it obtains an order

instructing the original receiver to remedy substandard conditions under Code of Civil Procedure section 568.3. It would be absurd if it could *obtain* a right to such fees simply by moving to replace the original receiver with a successor receiver. Rather, we conclude when an initial receiver is appointed under Health and Safety Code section 17980.7, subdivision (c), the rules of that section apply to the receivership as a whole, including to any successor receiver; and likewise, when an initial receiver is appointed under Code of Civil Procedure section 568.3, the rules of that section apply to the receivership as a whole, including to any successor receiver.

We therefore conclude that the City was not entitled to attorney fees and expenses under section 17980.7, subdivision (c)(11).

3. *Health and Safety Code section 17980.7, subdivision (d)(1).*

Stabilis also contends that the City was not entitled to attorney fees and expenses under section 17980.7, subdivision (d)(1), because that section authorizes such an award only against "the owner," and neither Stabilis nor the receivership estate is an "owner." The City, however, relies on section 17980.7, subdivision (f), which defines "owner" as including "any successor in interest who had actual or constructive knowledge of the notice, order, or prosecution."

Assuming for the moment that Stabilis and the receiver are "successors in interest," they still are not successors in interest "who had actual or constructive knowledge of the notice, order, or prosecution." Hence, they are not owners. It is significant that this phrase uses "had" rather than "has." It therefore refers to successors

15

in interest who *already* had the necessary knowledge *when they succeeded to the interest*. It is not enough that they obtained that knowledge at some later time. Otherwise, the enforcement agency could transform an innocent successor in interest into an "owner" at any time simply by informing the successor of the proceeding. Here, when the City first served its notice, Stabilis already held its deed of trust and the receivership estate already existed.

Separately and alternatively, Stabilis and the receivership estate were not successors in interest to Valley and Mountain.

"Successor in interest" means "[s]omeone who follows another in ownership or control of property. *A successor in interest retains the same rights as the original owner, with no change in substance*." (Black's Law Dict. (10th ed. 2014) p. 1660, italics added.) Valley and Mountain is and was at all relevant times the legal owner of the property. Stabilis acquired only an equitable interest in it. (Cf. *Perez v. 222 Sutter St. Partners* (1990) 222 Cal.App.3d 938, 947–948 [grantee of easement is not "successor in interest" to grantor of easement].) Valley and Mountain, as legal owner, had the right to sell, encumber, and use the property; Stabilis did not.

This definition also does not include the receivership estate. Once again, Valley and Mountain remains the legal owner of the property. "'The receiver acquires no title, but only the right of possession . . . . The title remains in those in whom it was vested when the appointment was made.'" (*North v. Cecil B. De Mille Productions* (1934) 2 Cal.2d 55, 57–58.) Moreover, the receiver's right of possession is not his or her own.

16

"'A receiver is an agent and officer of the court, and is under the control and supervision of the court. [Citations.]' [Citation.]" (*Southern California Sunbelt Developers, Inc. v. Banyan Limited Partnership* (2017) 8 Cal.App.5th 910, 922.)

The City understandably cites and relies on *Estate of Baldwin* (1943) 21 Cal.2d 586. There, the Supreme Court held that "successor in interest," as used in Probate Code former section 1010, included a receiver. (*Baldwin* at pp. 591-592.) However, its reasoning, which turned in part on the "purpose" and "policy" behind Probate Code former section 1010 (*Baldwin* at p. 592), does not necessarily apply to Health and Safety Code section 17980.7. Indeed, the court acknowledged that "the adjudication of the meaning of the words 'successor in interest' . . . in distinguishable situations . . . is not determinative of the scope of that phrase as used by the Legislature relative to litigation in probate proceedings." (*Baldwin* at p. 591.)

Here, the purpose and policy of section 17980.7 demonstrate that "successor in interest," as used therein, does not include a receiver. Section 17980, subdivision (c) allows the trial court to appoint a receiver. Once appointed, the receiver works under the supervision of the court. There is no need to give the receiver the same rights, or to make him or her subject to the same restrictions, as an owner. For example, section 17980.7, subdivision (c)(3) provides that "[i]f a receiver is appointed, the owner and his or her agent of the substandard building shall be enjoined from collecting rents . . . ." But if a receiver is a "successor in interest" and therefore an "owner," this means the receiver must be enjoined from collecting rents. That would be absurd.

17

We therefore conclude that the City was not entitled to attorney fees and expenses under section 17980.7, subdivision (d)(1).

B.     *Attorney Fees and Expenses under the Indio Municipal Code.*

Finally, Stabilis contends that the City was not entitled to attorney fees and expenses under the Indio Municipal Code because it had not yet prevailed on its cause of action to abate a public nuisance.

Indio Municipal Code, section 10.20(C) provides:

"(C)  The prevailing party in any action . . . to abate a public nuisance . . . may recover its reasonable attorneys' fees. . . .  The non-prevailing parties shall be jointly and severally liable for all costs, expenses, and fees, including attorneys' fees, owed to the prevailing parties."

The key question, then, is whether Stabilis and the receivership estate were "non-prevailing parties" in an "action . . . to abate a public nuisance."  The City claims that it was the prevailing party because it had "obtained the very relief which it sought — namely the modification, discharge, and appointment of a new health and safety receiver."  However, it sought that relief in its first cause of action; its public nuisance causes of action remained pending.[9]

---

[9]     Indeed, the first cause of action also remained pending, because the receiver had not yet rendered his final account and report and obtained his final discharge.  (See Cal. Rules of Court, rule 3.1184(a).)  This fact raises additional issues, which we discuss in more detail (but do not resolve) in part III.C, *post*.

18

The City asserts that "a party is a 'prevailing party' for attorneys' fees purposes if it 'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' [Citation.]"  Under Indio Municipal Code section 10.20(C), however, it had to be not only the prevailing party, but specifically the prevailing party in an "action . . . to abate a public nuisance."  Obtaining some of the benefit that it sought on a *different* cause of action did not qualify it.

The order modifying the receivership — which, according to the City, made it the prevailing party — did include a finding that "[t]he Subject Property is substandard, constitutes a public nuisance, and is being maintained in a manner that violates State and local laws."  However, that did not make the City a prevailing party in an action to abate a public nuisance, because *the nuisance had not yet been abated*.

In addition, Stabilis was *not a non-prevailing* party.  The City's public nuisance causes of action were asserted against the Kaura parties, as well as Stabilis.  The only parties who can be liable for a nuisance are "'"the party who maintains the nuisance" as well as "the party or parties who create or assist in its creation." [Citation.]'"  (*City of Modesto Redevelopment Agency v. Superior Court* (2004) 119 Cal.App.4th 28, 38; see also *Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360, 1379 [property manager that was not aware of and did not authorize misconduct by tenant's dog held not liable for nuisance]; *Brown v. McAllister* (1870) 39 Cal. 573, 578–579 [owner of property across which offensive matter flowed, from property uphill and onto property downhill, held not liable for nuisance].)

19

The Indio Municipal Code does not purport to expand nuisance liability any more broadly. It provides that a property owner can be ordered to abate a nuisance. (Indio Muni. Code, §§ 95A.108(A), 95A.113(C).) It also provides that "[u]pon the administrative, civil, or criminal determination that a party or parties is/are responsible for a nuisance condition or violation of this Code ('Responsible Party'), the Responsible Party shall become personally liable for the City's Enforcement Costs incurred in abating that public nuisance or prosecuting that violation." (Indio Muni. Code, § 10.23(B).)

Accordingly, the City's complaint alleged that "[t]he parties" had "caused," "maintain[ed]," and "allowed" the alleged public nuisances. The order modifying the receivership, however, did not adjudicate any particular party's responsibility for the nuisance. That awaited further litigation.

Admittedly, the trial court found that Stabilis should be liable for attorney fees, costs, and expenses supposedly because the substandard conditions developed under "the first receiver" (*sic*; in context, meaning Receiver Carlson, the second receiver) and Stabilis was in "control of the first receiver." Stabilis contends, however, that this finding is not supported by the evidence. That is correct.

In connection with the motion for attorney fees and expenses, there was no evidence as to when the substandard conditions "developed." All the motion showed was that the City discovered the conditions during an inspection in March 2014. At that point, however, due to Valley and Mountain's bankruptcy, Receiver Daly had not yet been able to take possession of the property. It was not until April 2014 that the

20

automatic stay was lifted, Receiver Carlson replaced Receiver Daly, and Receiver Carlson was finally able to take possession. We also note that there was no evidence that Stabilis exercised any control over Receiver Daly.

Even assuming that control over Receiver Carlson was relevant, there was no evidence *in connection with the motion for attorney fees and expenses* that Stabilis had such control. Moreover, in connection with the earlier motion to disqualify Receiver Carlson, the trial court declined to find that Stabilis controlled him; it disqualified him only because he had entered into a prohibited agreement and had failed to make progress.

We therefore conclude that the City was not entitled to attorney fees and expenses under Indio Municipal Code section 10.20(C).

C.      *Finality*.

Our discussion in part III.B, *ante*, regarding prevailing and non-prevailing parties, adumbrates a broader issue.

Ordinarily, there can be no prevailing — or non-prevailing — party until there is a final judgment. "It is apparent that until the litigation is finally disposed of, it cannot be ascertained that the outcome is more favorable to one party than to the other. Such determination requires a comparison of the extent to which each party has succeeded and failed to succeed in its contentions. [Citation.] This cannot be done until the final outcome is reached." (*Bank of Idaho v. Pine Avenue Associates* (1982) 137 Cal.App.3d 5, 15 [construing Civ. Code, § 1717]; see also *Hsu v. Abbara* (1995) 9 Cal.4th 863, 876

21

["The prevailing party determination is to be made only upon final resolution of the contract claims."].)

The City cites *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553 as holding (in the City's words) that "a favorable final judgment is not necessary." In *Graham*, however, the trial court had dismissed the case as moot because, while it was pending, the defendant had offered all of the relief sought. (*Id.* at p. 563.) Thus, there was a *final* judgment; it simply was not clearly *favorable* to the plaintiffs.

It is also significant that in *Graham*, the Supreme Court was construing Code of Civil Procedure section 1021.5. (*Graham v. DaimlerChrysler Corp.*, *supra*, 34 Cal.4th at pp. 560-561.) "Apart from the sphere of private attorney general actions under Code of Civil Procedure section 1021.5, the award of interim attorney fees in California remains a wholly untested and novel concept that is ordinarily barred by explicit statutory language. [Citations.]" (*Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 833.) Even when not explicitly barred, interim awards are not allowed "in the absence of a clear[] expression of legislative intent." (*Ibid.*)

In this appeal, however, Stabilis has not argued that the City was not a prevailing party *at all* because there was no final judgment. Rather, it argues only narrowly — and only in connection with Indio Municipal Code section 10.20(C) — that the City was not the prevailing party on the causes of action to abate a public nuisance. The parties have not had an opportunity to brief this issue. For this reason, we do not definitively decide

22

it; we merely call it to attention of the parties and the trial court in the event of further litigation.

IV

APPEALABILITY

The City contends that the order granting its motion for attorney fees and expenses is not appealable.

Ordinarily, if appealability is an issue at all, it is the first issue that we address in our opinion. Here, however, the appealability question requires an understanding of the interaction between Code of Civil Procedure section 568.3 and Health and Safety Code section 17980.7. For this reason — and because we ultimately decide that the order is appealable — we choose to discuss it at the end, after our discussion of these statutes.

"[G]enerally an appeal may be taken only from a final judgment, from orders after judgment, and from specified appealable orders ([Code Civ. Proc.,] § 904.1)." (*In re Marriage of Laursen & Fogarty* (1988) 197 Cal.App.3d 1082, 1086.)

One exception to this general rule is the collateral order doctrine. Under this doctrine, an interim order is appealable "when the following three elements are present [citations]:

"• The judgment or order is *final* as to the collateral matter;

"• The subject of the judgment or order is in fact *collateral* to the general subject of the litigation; and

23

"• [T]he judgment or order directs the *payment of money* by the appellant or the *performance of an act* by or against the appellant." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2018) ¶ 2:77, p. 2-55.)

The collateral order doctrine "applies *only* '[w]here the trial court's ruling on a collateral issue "is substantially the same as a final judgment in an independent proceeding" [citation], in that it leaves the court no further action to take on "a matter which . . . is severable from the general subject of the litigation."' [Citation.] If an order is '"important and essential to the correct determination of the main issue"' and '"a necessary step to that end,"' it is not collateral. [Citation.]" (*San Joaquin County Dept. of Child Support Services v. Winn* (2008) 163 Cal.App.4th 296, 300.)

An award of attorney fees and costs prior to final judgment is ordinarily deemed to be collateral to the main action and therefore appealable. (*Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1015-1016; *In re Marriage of Weiss* (1996) 42 Cal.App.4th 106, 119.) Here, the City does not dispute that the order was final and that it directed the payment of money. However, the City argues that the order was not genuinely collateral, because the City's cause of action for a receiver, as well as its right to attorney fees and expenses, both turned on the applicability of section 17980.7, subdivision (c).

In the trial court, however, there was no serious dispute regarding the City's right to an order modifying the receivership. Its motion to modify cited both Code of Civil Procedure section 568.3 and Health and Safety Code section 17980.7, subdivision (c).

And for the reasons stated in part III.A.1, *ante*, it was clearly entitled to have the receivership modified under one statute or the other; the trial court did not even have to decide which.

Stabilis opposed the motion; however, it did not argue that the City was not entitled to an order modifying the receivership. It merely argued that the modification sought was unnecessary and/or premature. Its main concern was that nothing should be done that would prevent it from foreclosing on the property. Moreover, in this appeal, Stabilis expressly concedes "that the City had the right to intervene into the proceedings and to request that the receivership orders be modified."

Hence, we cannot say that the question of whether Health and Safety Code section 17980.7, subdivision (c) applied — rather than Code of Civil Procedure section 568.3 — was "important and essential to the correct determination of the main issue." The only practical consequence of this question was with respect to the availability of attorney fees and expenses.

We therefore conclude that the challenged order was appealable.

V

DISPOSITION

The order appealed from is reversed. Stabilis is awarded costs on appeal against the City.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ

P. J.

25

We concur:

McKINSTER
J.

CODRINGTON
J.