Filed 12/11/20 Certified for Publication 1/8/21 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CITY OF NORCO, | |
| Plaintiff and Respondent, | E072858 |
| v. | (Super.Ct.No. RIC1709678) |
| RONALD T. MUGAR, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Chad W. Firetag, Judge. Affirmed.

Pillsbury Winthrop Shaw Pittman, Thomas V. Loran III, and William T. Palmer; Institute for Justice, Joshua A. House, and Jeffrey H. Redfern for Defendant and Appellant.

Dapeer Rosenblit & Litvak, William Litvak, and Eric P. Markus for Plaintiff and Respondent.

Plaintiff and respondent City of Norco (City) filed this receivership action to abate what it describes as "nearly 20 life-safety hazards" on a property belonging to defendant

and appellant Ronald R. Mugar. During the litigation, Mugar abated the substandard conditions on the property, and the matter was dismissed.

Mugar appeals the trial court's order declaring the City the prevailing party and awarding it attorney fees pursuant to Health and Safety Code[1] section 17980.7, subdivision (c)(11). Mugar contends that (1) his due process rights were violated because the City was represented by a private law firm with an inappropriate financial interest in the litigation, and without adequate supervision by neutral government attorneys; (2) the award of attorney fees unconstitutionally burdens his First Amendment right to petition by penalizing him for asserting defenses in the action; and (3) the City should not be considered the prevailing party. The City argues that Mugar forfeited his constitutional arguments, and it contests the merits of Mugar's claims.

We disagree with the City that Mugar forfeited his constitutional arguments. On the merits, however, we reject each of Mugar's contentions and affirm the judgment.

## I. BACKGROUND

The City and Mugar have been in conflict about substandard conditions on Mugar's property since about 2007, when neighbor complaints brought the property to the City's attention. In 2008, this conflict led to criminal charges against Mugar. Mugar pled guilty to several misdemeanors. He was initially granted deferred entry of judgment, conditioned on his abating various code violations. After failing to satisfy those conditions, he was sentenced to 36 months of supervised probation.

---

[1] Further undesignated statutory references are to the Health and Safety Code.

2

In 2012, the City issued a formal notice ordering Mugar to abate substandard conditions on the property that had again resulted in neighbor complaints. The parties resolved the issue by entering into a Nuisance Abatement Agreement.

Most recently, after more neighbor complaints and a series of inspections, in March 2017 the property was "'red tagged' [. . .] and declared a 'substandard building,' a public nuisance, and unsafe to occupy." Mugar was issued a notice of 19 violations of the City's municipal code and California's Health and Safety Code, and ordered to abate the unlawful conditions.[2] Mugar failed to comply with the notice's abatement instructions; even after an extension of time, Mugar told the City's code compliance officer that conditions on the property had "'gotten worse.'" The City, acting through outside counsel, initiated this action on May 30, 2017, by filing both a "Petition for Appointment of Receiver, Injunctive and Other Relief Pursuant to Health and Safety Code Section 17980.7, et seq." (petition), and a motion for appointment of a receiver and preliminary injunction.[3]

---

[2] Sections 17980.6 and 17980.7 of the Health and Safety Code comprise "a statutory scheme providing certain remedies to address substandard residential housing that is unsafe to occupy. Pursuant to section 17980.6, an enforcement agency may issue a notice to an owner to repair or abate property conditions that violate state or local building standards and substantially endanger the health and safety of residents or the public. Section 17980.7 provides that, if the owner fails to comply with the notice despite having been afforded a reasonable opportunity to do so, the enforcement agency may seek judicial appointment of a receiver to assume control over the property and remediate the violations or take other appropriate action." (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 912 fn. omitted.)

[3] We previously reserved for consideration the City's request for judicial notice of the fact that "[a]t least 384 cities in the state of California employ outside counsel to

*[footnote continued on next page]*

On July 6, 2017, the trial court granted the City's motion, after a hearing that Mugar was unable to attend personally because of a health issue that required hospitalization. The court's order appointing the receiver and ordering a preliminary injunction, filed on July 26, 2017, provided that Mugar was permitted "to continue to perform voluntary abatement measures at the Subject Property until such time as the Receiver accepts his appointment and tenders his oath."

The receiver filed his oath on August 3, 2017. In the meantime, however, Mugar (through newly hired counsel) and the City agreed that Mugar would have another opportunity to fix the conditions on the property himself. Mugar had applied ex parte for a stay of the court's order appointing the receiver so he could move to have that order reconsidered or vacated. That ex parte application was heard on August 2, 2017. At the hearing, the parties informed the court that they had reached a stipulation that (1) the receivership would "be held in abeyance until further order of the Court"; (2) Mugar would correct the violations alleged in the City's petition, except for those related to the laundry room on the premises, by August 15, 2017; (3) by the same date, Mugar would "schedule, undergo, and pass final inspection" confirming the corrections had been made; (4) Mugar would "submit to the City all application(s) for any permits required to demolish and/or repair the laundry room no later than August 8, 2017"; and (5) Mugar's motion to reconsider or vacate the order appointing the receiver would be calendared for

perform special prosecution and/or city attorney services." The City proposes that this fact is "'not reasonably subject to dispute and . . . capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy.'" (Evid. Code § 452, subd. (h).) The request is granted as unopposed. (Cal. Rules of Court, rule 8.54(c).)

4

September 6, 2017.  The City expressly reserved its "right to file a motion to be declared the prevailing party in this matter and/or a motion for attorneys' fees and costs."  The trial court accepted the parties' stipulation.

The property passed inspection on August 15, 2017; as contemplated by the stipulation, the violations identified in the City's petition had been "satisfactorily abated," with the exception of those relating to the laundry room.  Mugar also applied for a permit to repair the laundry room.  The City, however, rejected Mugar's application, explaining—not for the first time—that an "'over the counter'" permit could be issued for demolition, but "'any other technical permit would require plan review and approval.'"

A lengthy dispute ensued between Mugar and the City regarding a repair permit.  Mugar contended that a permit from 1969 should be "reopened" and the repairs completed to the building standards applicable in 1969; the City disagreed.  The hearing on Mugar's motion was continued several times during this conflict.  After some back-and-forth, on October 16, 2017, Mugar was granted a permit to demolish the laundry room.  In April 2018, however, the laundry room still had not been demolished, and Mugar continued, unsuccessfully, to try to get the City to renew the 1969 permit.

On April 30, 2018, the trial court held a hearing on Mugar's motion to reconsider the appointment of the receiver the preceding July.  The court did not rule on the motion, however, continuing the matter until November 5, 2018.  The court ordered Mugar to either repair or demolish the laundry room by no later than October 16, 2018.  The court commented that it was "not going to get involved and try to say that the City must accept

5

an application for repair"; rather, the permitting process, "in terms of what needs to be given with that type of application . . . just has to run its normal course."

After another unsuccessful attempt to have the City renew the 1969 permit, on July 5, 2018, Mugar applied for a new permit authorizing repair of the laundry room. The City granted the application on July 10, 2018, issuing a "combination building permit" for "'completion of work originally permitted on 12/17/1969, which was expired without inspections.'" The new permit was subject to conditions, which required repairs to bring the laundry room into compliance with current standards, as modified pursuant to the discretion of the City's building official. Mugar completed repairs pursuant to the new permit, and on August 9, 2018, the property passed its final inspection.

After another continuance, the court heard Mugar's reconsideration motion on November 13, 2018. The court stated that it "did not find that there was legal reason for granting a reconsideration of the 7-26-17 order on grounds of [Code of Civil Procedure section 1008] or to set aside the order pursuant to [Code of Civil Procedure 473]." During the hearing, however, the City requested that the court terminate the receivership in light of the completed repairs. The court therefore ordered the July 26, 2017, order appointing the receiver vacated on the ground that "there are no reasons to continue the receivership as all of the nuisance issues have been resolved."

The City brought a motion seeking, among other things, to be declared the prevailing party in the litigation and an award of $60,798.94 in attorney fees and costs.

6

The court granted the motion, finding the City to be the prevailing party and awarding the amount requested.

## II.  DISCUSSION

A.  *Forfeiture*

The City contends that Mugar forfeited his due process and First Amendment arguments by failing to raise them in the trial court.  Not so.

In Mugar's trial court briefing in opposition to the City's fee motion, the first of four argument sections was entitled "Awarding Fees Would Violate Due Process Because the Critical Decisions in This Case Were Not Made by Neutral, Disinterested Government Attorneys."  This section makes many of the same arguments and cites many of the same authorities as Mugar's briefing on appeal.  The second of Mugar's argument sections was entitled "The Prosecution Fees Ordinance Unconstitutionally Burdens [Mugar's] First Amendment Right to Petition and Access the Courts."  No doubt, therefore, Mugar raised both due process and First Amendment issues in the trial court.

The City proposes that Mugar's trial court constitutional challenges were "limited to a single provision of the City's municipal code."  Mugar's trial court due process arguments, however, do not mention the municipal code at all.  Rather, as he does on appeal, Mugar contended more generally that awarding attorney fees and costs to the City's outside counsel would run afoul of due process principles.  Mugar's First Amendment arguments reference the City's prosecution fees ordinance, but they are not

7

focused on the specific terms of the ordinance but rather on the burden of the award (whatever its basis) on Mugar's exercise of his First Amendment rights.

We therefore do not deem any of Mugar's constitutional arguments forfeited. The City had an opportunity to litigate all the relevant factual issues. "On appeal, a party may raise a new issue of law based on undisputed facts [citation], and may even 'change the legal theory he relied upon at trial, so long as the new theory presents a question of law to be applied to undisputed facts in the record.'" (*C9 Ventures v. SVC-West, L.P.* (2012) 202 Cal.App.4th 1483, 1492.) Even if Mugar failed to raise any dimension of his constitutional arguments in the trial court, we nevertheless would have the discretion to reach the merits. (See *Francies v. Kapla* (2005) 127 Cal.App.4th 1381, 1386.) Because he raised the arguments adequately, we exercise that discretion to any extent that it is necessary to do so.

## B. *Due Process*

Mugar contends that his due process rights were violated because the City was represented by retained outside counsel—as he frames it, a "private prosecutor" rather than "neutral government attorneys"—with a financial interest in the litigation and without adequate supervision by government attorneys. We find no constitutional infirmity in the fee arrangement between the City and its outside counsel.

Our Supreme Court has recognized that due process rights are potentially implicated when a government entity retains a private law firm or attorney as outside counsel to bring a lawsuit. "[S]uch an attorney, like an attorney directly employed by the

8

government, 'has the vast power of the government available to him; he must refrain from abusing that power by failing to act evenhandedly.'" (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 391, quoting *People ex rel. Clancy v. Superior Court* (1985) 39 Cal.3d 740, 746 (*Clancy*).) Due process concerns may arise where an attorney representing the government has a "direct pecuniary interest in the outcome of a case." (*County of Santa Clara v. Superior Court* (2010) 50 Cal.4th 35, 51 (*Santa Clara*).)

Thus, our Supreme Court has stated: "When a government attorney has a personal interest in the litigation, the neutrality so essential to the system is violated. For this reason prosecutors and other government attorneys can be disqualified for having an interest in the case extraneous to their official function." (*Clancy*, *supra*, 39 Cal.3d at p. 746.) In *Clancy*, an attorney (Clancy) had been hired by the City of Corona as an independent contractor to bring a nuisance action against a particular business. (*Id.* at p. 743.) Clancy's retention agreement provided for him to be paid $60 per hour, but that amount would be reduced to $30 per hour if Corona lost the case, or if it prevailed but did not recover its fees. (*Id.* at p. 745.) The Supreme Court found that contingent fee arrangement "antithetical to the standard of neutrality that an attorney representing the government must meet when prosecuting a public nuisance abatement action," and ordered Clancy disqualified. (*Id.* at p. 750.) The Supreme Court also specified, however, that Corona was not precluded from rehiring Clancy to represent it on other terms. (*Id.* at p. 750, fn. 5; see also *Santa Clara*, *supra*, 50 Cal.4th at p. 50 [discussing *Clancy*].)

9

In *Santa Clara*, the Supreme Court "narrowed" the broad holding of *Clancy*, finding that an "absolute prohibition on contingent-fee arrangements" in civil public nuisance actions was "unwarranted." (*Santa Clara*, *supra*, 50 Cal.4th at pp. 52, 56.) *Santa Clara* again emphasized that a contingency arrangement "created a *potential* conflict of interest between the private attorneys' financial stake in the litigation's outcome and their duty to 'ensur[e] that a public prosecution is pursued in a manner that serves the public . . . .'" (*Orange County Water Dist. v. The Arnold Engineering Co.* (2011) 196 Cal App.4th 1110, 1122, quoting *Santa Clara*, at p. 58.) The Supreme Court found, however, that "retention of private counsel on a contingent-fee basis is permissible in such cases if neutral, conflict-free government attorneys retain the power to control and supervise the litigation" because "the heightened standard of neutrality is maintained and the integrity of the government's position is safeguarded." (*Santa Clara,* at p. 58.)

In this case, however, the City's outside counsel was not hired on a contingency basis and had no direct financial interest in the outcome of the litigation. Rather, the firm charged the City a fixed hourly rate, regardless of the outcome of the case, and regardless of whether costs are recovered. The concerns addressed in *Clancy* and *Santa Clara,* and the special requirements *Santa Clara* imposes with respect to contingency arrangements for outside counsel in civil public nuisance actions, are simply inapplicable here. Moreover, it is reasonable to infer that something like the agreement between the City and its outside counsel, based on a fixed hourly fee, is what the Supreme Court contemplated when it stated in *Clancy* that the disqualified outside counsel could be

10

rehired on terms other than the disapproved contingency arrangement. (*Clancy*, *supra*, 39 Cal.3d at p. 746.)

Mugar asserts that the arrangement between the City and its outside counsel is such that outside counsel "has discretion to decide how much work to give itself," including "the authority to decide when to bring cases and how to litigate them." He proposes that the firm's discretion is "essentially unconstrained—so long as it ultimately recovers costs from the people it prosecutes." He also asserts that outside counsel "promised, in advance, to try to maximize cost recovery," making it "impossible for [outside counsel] to neutrally decide whether to seek fees in particular cases."

These arguments, however, are untethered to any supporting evidence in the record. Mugar cites to a section of an attorney declaration in support of the City's motion for fees and costs, describing the fees and costs incurred. He also cites to a snippet of a "City Council Agenda Report" of a *different* city (Monrovia), recommending the approval of a "Consultant Services Agreement" with the same firm. The report notes that in some cases the Monrovia Municipal Code allows for recovery of attorney's fees, and states that the firm "work[s] with [the city's] staff to maximize cost recovery." Such evidence is, to put it mildly, inadequate to support the conclusions Mugar draws from it.

To the contrary, the City's contract with outside counsel provides that the firm's "services . . . in connection with any action are to commence only when a City official shall have assigned a matter to [the firm]." An attorney declaration in support of the City's fee motion establishes that the decision to bring a receivership action against

11

Mugar was made in consultation with "City officials as well as a representative of Riverside County Adult Services," and upon the authorization of the City. Although outside counsel communicated with Mugar regarding settlement, and discussed settlement-related issues with City officials, "[e]ach of the City's settlement demands was determined by the Norco City Council, as was each of the City's response[s] to [Mugar's] counter-offers." As such, the relationship between the City and its outside counsel is unremarkable, and consistent with hornbook principles regarding the authority of the client versus the authority of the attorney. (See Weil & Brown, Cal. Practice Guide: Professional Responsibility (The Rutter Group 2019) ¶ 3.132 ["The fact a client hires a lawyer to represent him or her in a particular matter does not mean the lawyer is authorized to exercise complete control over that matter. Unless the parties agree otherwise, the attorney has *implied authority* as to "procedural" matters, but the *client* retains the right to make ultimate decisions affecting the outcome of the case (i.e., matters affecting the client's 'substantive rights')"].)

Mugar speculates that a "non-conflicted prosecutor" would not have pursued the receivership action in light of his efforts to ameliorate the problems on the property himself, and his hospitalization that interrupted those efforts and caused him to miss the initial hearing on the City's receivership petition. He further speculates that it is outside counsel's "unconstitutional conflict" that caused the City to seek to recover its fees. As discussed above, however, outside counsel initiated this receivership action only upon consultation with, and with the authorization of, the City. The terms of the parties'

12

stipulation—placing the receivership in abeyance to allow Mugar more time, but also expressly reserving the City's right to seek fees as the prevailing party in the litigation—were "determined by the Norco City Council." We find it improbable that outside counsel's fee arrangement with the City had any bearing on the City's decision to proceed with the receivership action, or to seek fees as the prevailing party. In any event, neutral government officials certainly actually supervised and controlled the action. (See *Santa Clara*, *supra*, 50 Cal.4th at p. 58.)

Mugar's arguments on appeal rely in part on analogy to several federal district court cases. We find the analogies to be strained, at best. In *Harjo v. City of Albuquerque* (D.N.M. 2018) 326 F.Supp.3d 1145 (*Harjo*), the district court considered a challenge to a city vehicle forfeiture ordinance, and specifically the involvement of city enforcement personnel, prosecutors, and administrative law judges. The court held that the city employees who enforced the program had an "unconstitutional institutional incentive to prosecute forfeiture cases, because forfeiture revenues are set in a special fund, and the forfeiture program can spend, without meaningful oversight, all of the excess funds it raises from previous years." (*Harjo* at p. 1193.) It further held the forfeitures violated due process "by depriving car owners of their property unless they prove their innocence." (*Ibid.*) It found, however, that the enforcement personnel did not have "an unconstitutional personal incentive to prosecute" because "their continued employment or salary is not contingent on the forfeiture program revenues." (*Ibid.*) The

13

case does not address the use of outside counsel to bring civil public nuisance actions on behalf of a municipality.

*Brucker v. City of Doraville* (N.D. Ga. 2019) 391 F.Supp.3d 1207 addressed a system of municipal fines, fees, and forfeitures, largely enforced by city law enforcement personnel, and tried in the city's municipal court before a judge appointed and serving at the pleasure of the City Council, with the City Attorney acting as prosecutor. (*Id.* at pp. 1208-1209.) There is mention that "property violations" were "handled by a private firm." (*Id.* at p. 1209.) In denying the defendants' motion to dismiss, however, the trial court did not address any alleged conflict of interest arising from the use of outside counsel for some cases. (*Id.* at p. 1218.) Rather, the court's discussion and holding is focused on the alleged improper incentives of the city's law enforcement personnel and municipal court judges. (*Ibid.*)

In *Sourovelis v. City of Philadelphia* (E.D. Pa. 2015) 103 F.Supp.3d 694, the district court denied a motion to dismiss a due process claim challenging police and prosecutors' "retention of forfeited property and monetary proceeds" in actions brought under state law by the city. (*Id.* at p. 709.) Again, the case does not involve the use of outside counsel to bring any action, or the potential conflicts of interest arising from doing so.

Each of these three federal cases are different enough on their facts from this case to be unhelpful as analogies to the present case. Moreover, we are both bound by, and

14

persuaded by, the reasoning adopted by our Supreme Court in *Santa Clara*, as discussed above.

We find Mugar has not demonstrated any violation of his due process rights.

C. *First Amendment*

Mugar argues that the trial court's award of attorney fees to the City is an unconstitutional burden on his "First Amendment right to access and petition the courts" because it "penalizes [him] for robustly defending his property rights." We are not persuaded.

The First Amendment to the United States Constitution protects the right "to petition the Government for a redress of grievances," which includes the right of access to the courts. (*California Motor Transport Co. v. Trucking Unlimited* (1972) 404 U.S. 508, 513.) "Restrictions on the right to petition generally are subject to the same analysis as restrictions on the right of free speech." (*Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 162 (*Mejia*).) "[C]onstitutional rights to petition have been subjected to reasonable restrictions to prevent abuse of the right, and narrowly drawn restrictions on that right can be valid." (*Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 195 (*Schroeder*).)

A prevailing party fee statute arguably may "cause some incidental restriction on conduct protected by the First Amendment," so it is "evaluated under the . . . standard announced in *United States v. O'Brien* (1968) 391 U.S. 367 (*O'Brien*)." (*Mejia, supra*, 156 Cal.App.4th at p. 162.) Under *O'Brien*, there is sufficient justification for the

15

restriction "[1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." (*O'Brien*, *supra*, at p. 377; see *Schroeder*, *supra*, 97 Cal.App.4th at p. 196 ["'[T]he right to petition may be subject to legislatively imposed conditions and restrictions, provided the restrictions are narrowly drawn to achieve a substantial governmental interest that is content neutral and unrelated to the suppression of the exercise of First Amendment rights"].) As to the fourth requirement, the statute need not apply the least restrictive means to achieve its goals, as required under the strict scrutiny analysis applied to content-based restrictions. "Rather, the incidental restriction must be 'narrowly tailored' and cannot be 'substantially broader than necessary to achieve the government's interest.'" (*Mejia*, at p. 163.)

Mugar does not challenge the Legislature's constitutional authority to legislate on the subject of attorney fees. Section 17980.7, subdivision (c)(11), serves to further important public policies unrelated to the suppression of free expression—in this case, the abatement of public nuisances, where the owner has failed to do so after notice and a reasonable opportunity to voluntarily comply. (See § 17980.7, subd. (c); see also *Mejia*, *supra*, 156 Cal.App.4th at p. 163 [discussing fee awards under Code Civ. Proc. § 1021.5, stating: "The purpose of an award of fees against an unsuccessful opposing party is not to penalize petitioning activity by that party, but to encourage litigation by the successful

16

party by making the litigation financially feasible"].)  Furthermore, "we regard any incidental restriction on an opposing party's right to petition as a result of the financial burden of an attorney fee award . . . as justifiable and narrowly tailored to achieve the purpose of encouraging the enforcement of important public rights by making the litigation financially feasible to the successful party."  (*Mejia*, *supra*, at p. 163.)  Thus, each of the four requirements listed in *O'Brien*, *supra,* 391 U.S. at page 377 are satisfied here, and section 17980.7, subdivision (c)(11) passes constitutional muster.

The authorities cited by Mugar in support of a contrary conclusion are inapplicable.  For example, *California Teachers Association v. State of California* (1999) 20 Cal.4th 327 (*CTA*) "did not render unconstitutional statutes requiring litigants to pay attorney's fees but was limited to its unique context of a 'virtually unprecedented' statute requiring an employee who loses a good faith challenge to discipline to pay for the judge."  (*Banning v. Newdow* (2004) 119 Cal.App.4th 438, 453 [discussing *CTA*, quoting *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 64].)

Mugar describes *Village of Glenview v. Zwick* (2005) 356 Ill.App.3d 630 [826 N.E.2d 1171] as addressing a "cost recovery scheme" that is "similar" to section 17980.7, subdivision (c)(11).  Not so.  Rather, the fee statute at issue in *Village of Glenview* was unilateral, allowing the government entity to recover its fees if successful in an "'enforcement or defense proceeding,'" but not making it liable for fees if it lost.  (*Village of Glenview*, *supra*, 826 N.E.2d at p. 632.)  Moreover, the Illinois court's decision rested on its evaluation of whether, under Illinois law, a local government had

17

the power to use its municipal code to direct state courts how to allocate fees among parties. (*Id.* at pp. 640-641.) Such reasoning has no bearing on our analysis here.

We find no violation of Mugar's First Amendment rights.

D. *Prevailing Party*

Mugar asserts that the trial court erred by finding the City to be the prevailing party in this action. We find no abuse of discretion.

The City proposes that we should not reach the issue of whether it was the prevailing party, arguing that the fees and costs awarded were proper as "reasonable costs of enforcement" pursuant to section 17980.7, subdivision (d)(1), regardless of whether the City is technically a prevailing party in the litigation.[4] We disagree. Section 17980.7, subdivision (c)(11) is the applicable statute where, as here, a receiver was appointed pursuant to section 17980.7, subdivision (c). (*City & County of San Francisco v. Ballard* (2006) 136 Cal.App.4th 381, 401.)

---

[4] Section 17980.7, subdivision (d)(1) provides: "If the court finds that a building is in a condition which substantially endangers the health and safety of residents pursuant to Section 17980.6, upon the entry of any order or judgment, the court shall do all of the following: [¶] (1) Order the owner to pay all reasonable and actual costs of the enforcement agency including, but not limited to, inspection costs, investigation costs, enforcement costs, attorney fees or costs, and all costs of prosecution."

18

Health and Safety Code section 17980.7, subdivision (c)(11) provides: "The prevailing party in an action pursuant to this section shall be entitled to reasonable attorney's fees and court costs as may be fixed by the court." This statute does not define the term "prevailing party," so the trial court should "analyze[] which party had prevailed on a practical level." (*Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1574 (*Heather Farms*).) Here, the trial court did so using the "catalyst theory." Courts applying this theory look to the practical impact of litigation on the public interest to determine whether the plaintiff may be awarded attorney fees. (See *Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 353.) "Under the catalyst theory, attorney fees may be awarded even when litigation does not result in a judicial resolution if the defendant changes its behavior substantially because of, and in the manner sought by, the litigation." (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 560.) We review the trial court's determination for abuse of discretion. (*Heather Farms*, *supra*, at pp. 1573-1574.)

The trial court reasonably determined that Mugar "would not have complied with the City's abatement demands without the appointment of the receiver." Mugar insists that he had already been "working toward compliance before the petition was filed." It is not apparent, however, why Mugar believes the trial court was compelled to accept that assertion as true. Before the petition was filed, Mugar's property was "'red-tagged,'" he received an order to abate specific nuisances, and he sought and received an extension to comply. Nevertheless, he took only "minor cleanup actions" at the property, did not abate

19

the nuisances, and told an inspecting officer at his extended deadline that the property conditions had "'gotten worse.'" Moreover, even assuming it to be true that Mugar was "working" toward compliance, it is reasonable to infer that the lawsuit and the parties' agreement upon a definite end date of the period in which the receivership would be held in abeyance prompted Mugar to *complete* the necessary work. It was not before a lengthy series of delays, and only shortly before the hard deadline set by the court, that Mugar in fact achieved compliance.

Furthermore, Mugar's contention that "the City's specific legal action was unsuccessful" is wrong. The City's litigation objective was to abate a public nuisance. The City's petition contemplated the appointment of a receiver to accomplish that end, but prompting Mugar to complete the work himself, without a receiver having to do so, achieved the same result. Moreover, though the *receiver* performed no work on the property, it is reasonable to view the *receivership* as causing Mugar to finally do so. The trial court was well within the bounds of its discretion in finding that the litigation served as the catalyst for the City achieving its litigation objective.

Mugar proposes that he should be considered to have prevailed "on the laundry room matter," since he eventually obtained a permit to "'complet[e] work originally permitted on 12/17/1969.'" This careful phrasing elides the fact that Mugar *never* prevailed in having the City renew or reopen the 1969 permit for the laundry room, as he repeatedly tried to do, or in having the City accept his view that 1969 building standards should apply to the repairs of the laundry room. Mugar was eventually granted a *new*

permit for "'completion of work originally permitted on 12/17/1969, which was expired without inspections,'" subject to conditions requiring that the structure be brought up to current standards, as modified pursuant to the discretion of the City's Building Official. The trial court did not err in finding that Mugar "has not produced any evidence that he was permitted to repair the laundry room under the 1969 permit."

Mugar argues that this court's decision in *Kaura v. Stabilis Fund II, LLC* (2018) 24 Cal.App.5th 420 compels a different conclusion. It does not. In *Kaura*, the City of Indio did not itself bring a receivership action pursuant to section 17980.7, but rather intervened in an ongoing receivership action pursuant to Code of Civil Procedure section 568.3. (*Kaura*, *supra*, at p. 424, 431.) Indio then sought and was awarded attorney fees and litigation costs associated with its intervention, as well as enforcement costs. (*Id.* at p. 427.) We found that section 17980.7 was inapplicable as a basis for the award (including either subdivisions (c)(11) or (d)(1)), because Indio had not brought an action under that section, but rather had intervened pursuant to Code of Civil Procedure section 568.3. (*Kaura*, at pp. 431-434.) We further found that an Indio Municipal Code section providing for an award of fees and costs to a "'prevailing party in any action . . . to abate a public nuisance" also did not apply. (*Id.* at pp. 434-435.) The reason the municipal code section did not apply was that "*the nuisance had not yet been abated*," and the issue of who was responsible for creating or maintaining the nuisance had not yet been adjudicated. (*Id.* at p. 434 .) We have no quarrel with *Kaura*'s reasoning, but it is simply inapplicable here.

21

## III.  DISPOSITION

The judgment is affirmed.  The City is awarded costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RAPHAEL
J.



We concur:

McKINSTER
Acting P. J.
FIELDS
J.


22

Filed 1/8/21

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| CITY OF NORCO, | |
| Plaintiff and Respondent, | E072858 |
| v. | (Super.Ct.No. RIC1709678) |
| RONALD T. MUGAR, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | |

Requests having been made to this court pursuant to California Rules of Court, rule 8.1120(a) for publication of a nonpublished opinion heretofore filed in the above-entitled matter on December 11, 2020, and it appearing that the opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c),

IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b). The opinion filed in this matter on December 11, 2020, is certified for publication.

CERTIFIED FOR PUBLICATION

                                              RAPHAEL
                                                    J.

We concur:

    McKINSTER
                Acting P. J.

    FIELDS
                J.

1